JAMISON *v*. SPIVEY.

4-5344                                          125 S. W. 2d 453

Opinion delivered January 30, 1939.

*Martin & Wootton* and *Verne McMillen,* for appellant.

*Leo P. McLaughlin* and *Richard M. Ryan,* for appellee.

GRIFFIN SMITH, C. J. We determine whether judgment shall stand on a verdict to compensate personal injuries appellee claims she sustained December 20, 1937.

Twenty-three errors are assigned. Those urged are: (1) That because of appellee's contributory negligence a verdict should have been instructed for defendant. (2) That defendant's cause was prejudiced through the court's refusal to give requested instruction No. 3.[1] (3) That the verdict and judgment are grossly excessive.

Appellee alleges she was injured while proceeding south on Cedar street in Hot Springs, occasioned when a truck owned by appellant backed out of a driveway. It was estimated that repairs to appellee's car would cost $37.50. Both the truck and appellee's car were moving slowly—perhaps seven or eight miles per hour—when the impact occurred. Appellee's car was pushed "forward and over" about eighteen inches or two feet. Appellee was driving.. Her husband occupied the front seat with her and testified that the thrust of the collision forced him against appellee, and that she, in turn, was "knocked against the left-hand door." Appellee claims to have been stunned; that "everything turned black," and she "had no recollection of anything," but thought the glass "coming in all over me" restored consciousness.[2]

---

[1] "You are instructed that if you find under the evidence in this case that the injury and damage complained of was the result of an accident which was unforeseen by the parties, plaintiff and defendant, and could not be reasonably foreseen by them, then your verdict will be for the defendant."

[2] Although appellee testified that when the collision occurred "everything turned black," and that she had no recollection of anything, her husband testified: "After I was pinned up against Mrs. Spivey I asked her to get out, and she said she couldn't, and she kind of hesitated, I thought. I don't know whether she fainted or not, but finally she opened the door and some one helped her out."

Mr. Spivey also testified that his wife fell from a street car and hurt one of her knees. Asked if both knees were not swollen, he said: "I don't know whether both of her knees are swollen, or not, because I never noticed; but I know one of them has been swollen. . . . She used a cane back on the farm to walk back and forth, but in the house she never used any cane."

Testifying as to medical attention after the accident, Mr. Spivey said: "Dr. Randolph is the man we got after—what's-his-name?— didn't come." "Q. Did he tell you she had a very high blood pres-

A verdict signed by nine of the jurors allowed compensation of $6,500. The court found this sum excessive and ordered a reduction of $1,500; or, in the alternative, a new trial if the remittitur were not entered within five days. This conditional order[3] was set aside and judgment entered on the verdict. By certiorari there was brought to this court an order entered almost five months later amending the orders of June 20 and June 29.[4] The amended order shows that in the absence of appellant and his attorneys, and without notice to them, one of appellee's attorneys consented to the remittitur.

The accident occurred in circumstances which presented a question of fact for the jury. Appellee and her

---

sure? A. He never told me anything. Q. Do you know whether he told your wife that, or not? A. I don't know."

Appellee testified: "I had no trouble [before the accident] in walking. I carried this cane for protection, for fear I would fall. My knee bothered me some. It bothers me now and is worse since the accident." Asked if she and her husband, after the accident, stated to bystanders that neither was hurt, she replied: "I said it this way: 'I am not hurt now as I feel.' . . . I says, 'I don't know what tomorrow may bring forth.'"

[3] The court's order was: "The order entered herein on June 20, 1938, granting the defendant a new trial, is hereby set aside for the reason that the plaintiff has not offered to remit the sum of $1,500, and the defendant has not filed or offered to file and enter of record a release of all errors that may have occurred at the trial.".

Section 1538 of Pope's Digest was declared invalid insofar as it curtailed the appellate jurisdiction of the Supreme Court. *St. Louis & N. A. R. Co.* v. *Mathis*, 76 Ark. 184, 91 S. W. 763, 113 Am. St. Rep. 85.

[4] Trial court's action November 7, 1938: "The orders of the court, made on June 20 and June 29, 1938, are hereby amended to show that on June 23, 1938, the plaintiff, Mrs. Jennie T. Spivey, by Richard M. Ryan, one of her attorneys, appeared before the trial judge and orally offered to file a remittitur in the sum of $1,500, but at said time neither the defendant nor his attorney was present and neither was notified either before or subsequent to said time of such tender. And it is further ordered by the court that said record be amended to show that after the court had made an order suggesting that the judgment was excessive in the sum of $1,500, that the defendant nor his attorneys offered to file and enter of record a release of all errors that may have occurred at the trial." [NOTE—It will be observed that this order states that plaintiff's counsel appeared before "the trial judge," as distinguished from the trial court].

husband testified that as the truck backed into the street it was observed. Appellee says she constantly sounded her car horn; that the truck stopped, then started again, and that she thought the driver heard her signals and stopped on that account. From this and other evidence the jury was warranted in finding that appellant's driver was negligent.

Suit was filed January 7, 1938, alleging that . . . "the plaintiff suffered a severe and permanent injury in the region of the lumbar portion of her back; also an injury to the back of her spine near the base of her head."

At the time the complaint was filed appellee had not been told by any physician what her injuries were. The evidence indicates that perhaps Dr. Garrett was called by appellee or her sister the day of the accident. Thereafter Dr. Bowman was in attendance. January 9, 1938, Dr. Randolph was called. None of the physicians found any bruises, abrasions, cuts, contusions, or other demonstrable injuries. Dr. Randolph testified: "Of course there seemed to be quite a few sensitive spots along the spine and the lower part of the neck, and she was sore through the abdomen and chest."

Appellee had formerly weighed 230 pounds, but at the time of the accident was somewhat lighter. In response to a hypothetical question directed by attorneys for plaintiff, Dr. Randolph answered that concurrence of the conditions enumerated could have caused the injuries complained of. Included in the question was a statement that appellee had been thrown to the floor of the car. There was no testimony supporting this assumption. However, no objection was interposed.

Appellee's blood pressure was from 230 over 110 to 250 over 125. December 26, 1937, Dr. Ellis examined appellee. Appellee told the physician she had not been bruised and that her condition was probably due to shock. At the time of Dr. Bowman's visit appellee did not complain of injury to her back or spine.

The following is from Dr. Randolph's cross-examination:

"Q. Did you, yourself, in your examination, find anything in particular that caused the injuries from which

she suffered? A. Only subjective symptoms from the patient herself. Q. In other words, when you say 'subjective,' you mean only symptoms she tells you she suffered. A. Yes. Q. But your examinations have not revealed any injury in any form from which she was suffering? A. No.''

It should be remembered Dr. Randolph was appellee's witness—her physician—the one upon whom she principally relied for professional support of her claim of injury. There was uncontradicted medical evidence that high blood pressure would not be attributed to an accident such as appellee experienced. On the contrary, it was testified that traumatic conditions (injuries or wounds) tend to produce low blood pressure.

Although appellee vigorously denied that she was in any manner afflicted prior to the accident, there is this testimony: ''Q. What do you mean by nerve tonic? A. Aromatic spirits of ammonia. That is my medicine.''

It seems certain, in the light of facts presented, that the collision between appellee's car and appellant's truck was not severe. The car door on the right side was bent in, its glass was broken, and some other damage was done; and yet, the car was not moved more than two feet. Ordinarily an impact throws passengers in the direction from which the force proceeds. For example, when head-on collisions occur, occupants of front seats are thrown against or through the windshield. Appellee's husband, however, says that in the instant case the rule of physics was reversed, and he was thrown or pushed to the left against his wife.

It was agreed, prior to trial, that X-ray pictures did not show injuries. In spite of this agreement, Dr. Randolph (without fault on the part of appellee's attorneys) stated: ''All I base my stuff on is the X-ray.'' Asked if he saw the X-ray, the doctor replied: ''No. It wouldn't have done any good for me to see it, because I can't read it.''

We have grave doubts that the evidence is sufficient to sustain a recovery of more than nominal damages. This doubt, however, is resolved in favor of appellee by allowing a new trial—a trial to be had in circumstances

free from the prejudice recognized by the trial court, as reflected in its finding that the verdict was excessive. It is our view that after deducting $1,500, the amount is still grossly excessive.

In *Singer Manufacturing Company* v. *Rogers*, 70 Ark. 385, 67 S. W. 75, and 68 S. W. 153, Mr. Justice RIDDICK, speaking for an undivided court, said: "Even where there may be some conflict in the evidence, a new trial will be granted where the verdict is so clearly and palpably against the weight of evidence as to shock the sense of justice of a reasonable person; and the evidence here, we think, calls for the application of that rule."

In *Catlett* v. *St. Louis, I. M. & S. Railway Company*, 57 Ark. 461, 21 S. W. 1062, 38 Am. St. Rep. 254, we said: "The test is as follows: After drawing all the inferences most favorable to the verdict that the evidence will reasonably warrant, is it sufficient in law to sustain the verdict?" It was then said that the legal sufficiency of testimony to support a verdict "is not a question of fact nor one of law and fact, but is a question of law upon which this court must pass."

In the view that we have taken it becomes unnecessary to discuss the other assignments of errors.

We reverse the judgment, and remand the cause for a new trial.

HUMPHREYS and MEHAFFY, JJ., dissent.